Pro Se Civil Complaint

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

2:26-cv-01853-LK

SAJJAD NASIR

     Plaintiff(s),

v.

1. EQUINIX INC.
2. NATIONAL AUSTRALIA BANK
3. GIO INSURANCE (SUN CORP GROUP)
4. CHINA UNICOM

     Defendant(s).

CASE NO. 3:26-cv-05809-JLR

**CIVIL COMPLAINT**

Refilled ECF No. 3, Order of Dismissal, W.D. Wash., Case No. 26-cv-01853-LK (June 25, 2026).

Jury Trial ⊠: Yes ☐ No

     Plaintiff refiles this action seeking a civil remedy pursuant to *18 U.S.C. § 1595* following the Order of Dismissal Without Prejudice entered by the United States District Court for the Western District of Washington in *Nasir v. China Unicom et al.*, Case No. *2:26-cv-01853-LK*. Plaintiff expressly does not concede the correctness of that dismissal order or any findings, conclusions, or legal determinations contained therein and has separately filed an appeal, Case No. *26-4162 (Circuit 9)*, challenging issues arising from the prior proceedings. Plaintiff files this action while preserving all rights, claims, arguments, and appellate issues related to the prior proceedings.

*18 U.S.C. § 1595 CIVIL REMEDY - 1*

Pro Se Civil Complaint

## I.    NATURE OF THE ACTION

This is a civil trafficking action brought under 18 U.S.C. § 1595 on behalf of the Plaintiff, who was subjected to and harmed by Defendants forced-labor and trafficking venture operating between September 30, 2024, and June 30, 2025. Plaintiff seeks to recover compensatory and statutory damages caused by Defendants' violations of the Trafficking Victims Protection Act ("TVPA"), specifically 18 U.S.C. §§ 1589 (forced Labor) and 1590 (trafficking), and to pursue civil remedies expressly authorized by § 1595. The wrongful conduct alleged herein was carried out through a coordinated joint-venture scheme spanning Singapore, Hong Kong, and the United States.

## II.    JURISDICTION & VENUE

The claims asserted herein arise under and pursuant to the Trafficking Victims Protection Act of 2000 ("TVPA"), as implemented through Chapter 77 of Title 18 of the United States Code, specifically 18 U.S.C. § 1595 (civil remedy) based on violations of 18 U.S.C. §§ 1589 (forced Labor) and 1590 (trafficking). This Court has jurisdiction over the subject matter of this action under:

1. 28 U.S.C. §1331 (federal question) — because Plaintiff's claims arise under federal law;

2. 28 U.S.C. §1332(a)(2) (diversity jurisdiction) — because Plaintiff is a citizen of Australia (a foreign state), Defendant Equinix Inc. is a citizen of Delaware (where it is incorporated) and California (its principal place of business), and the amount in controversy exceeds $75,000, exclusive of interest and costs;

3. 18 U.S.C. §1596(a)(1) and (a)(2) (extraterritorial jurisdiction) — because the alleged offenses occurred abroad and the alleged offenders are present in the United States; and

4. CMIC-EO13959 (sanctions jurisdiction) — because Defendant China Unicom is designated on the OFAC Non-SDN Chinese Military-Industrial Complex List.

5. Extraterritorial reach under 18 U.S.C. § 1596 is not a subject-matter jurisdiction requirement; it is a merits question under Morrison v. National Australia Bank Ltd. and therefore does not limit this Court's jurisdiction under 28 U.S.C. §§ 1331 or 1332.

*18 U.S.C. § 1595 CIVIL REMEDY - 2*

Pro Se Civil Complaint

6. costs of court, because Plaintiff's damages exceed $75,000.

Venue is proper in the Western District of Washington pursuant to 28 U.S.C. §1391(b)(1) because Defendant Equinix Inc. maintains offices in the State of Washington and is subject to personal jurisdiction in this district. Venue is also proper under 28 U.S.C. §1391(d) because Equinix Inc. is a corporation with contacts sufficient to subject it to personal jurisdiction in the Western District of Washington through its offices and operations in this district and therefore resides in this district for venue purposes. Venue is further supported by Equinix's ownership and operation of a Cable Landing Station (CLS) at 639 Gardeners Road, Sydney, Australia, which is part of the FCC-licensed PPC-1 submarine cable system connecting Sydney to Guam, a U.S. territory, and is subject to the jurisdiction of the Federal Communications Commission under the Cable Landing License Act, 47 U.S.C. §§ 34-39. Finally, venue is proper under 28 U.S.C. §1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this district, including the filing of the original complaint and the prior proceedings before this Court in Case No. 2:26-cv-01853-LK.

.

### III.     THE PARTIES TO THIS COMPLAINT

1.     **Plaintiff**

Sajjad Nasir is an individual residing in New South Wales, Australia. Plaintiff is a victim of trafficking and forced labor, as alleged herein, and brings this action on his own behalf pursuant to 18 U.S.C. § 1595.

2.     **Defendants**

Defendant Equinix Inc. is a Delaware corporation with its principal place of business in California, doing business in the State of Washington. Equinix is a citizen of Delaware and California for diversity purposes.

Defendant National Australia Bank ("NAB") is a financial institution organized under the laws of Australia, with its principal executive offices located at Level 28, 395 Bourke Street, Melbourne, Australia, and a branch office at 245 Park Avenue, New York, New York. NAB maintains a sponsored Level 1 American Depositary Receipt ("ADR") program in the United States, which trades on the OTC market under the symbol NABZY, with CUSIP number 632525408, and is managed by Deutsche Bank Shareholder Services at 48 Wall Street, New York, New York. NAB has filed registration statements with the Securities and Exchange Commission for its ADR program, including Form F-6 registration statements. NAB has therefore voluntarily submitted to the jurisdiction of the United States by establishing and maintaining an ADR program, appointing a U.S. transfer agent, and filing with the SEC. NAB is also subject to personal jurisdiction in the United States through its New York branch office.

*18 U.S.C. § 1595 CIVIL REMEDY - 3*

Pro Se Civil Complaint

Defendant GIO Insurance ("GIO") is a subsidiary of Suncorp Group Limited, an insurance and financial services company organized under the laws of Australia, with its principal executive offices located at Level 18, Suncorp Centre, 36 Wickham Terrace, Brisbane, Queensland, Australia 4000. Suncorp Group Limited maintains a sponsored American Depositary Receipt ("ADR") program in the United States, registered with the Securities and Exchange Commission on Form F-6 (Registration No. 333-191194), with Citibank, N.A. as depositary, and with an agent for service in the United States at Puglisi & Associates, 850 Library Avenue, Suite 204, Newark, Delaware 19711. Through its ADR program, Suncorp Group Limited has voluntarily submitted to the jurisdiction of the United States and the SEC. GIO Insurance, as a subsidiary of Suncorp Group Limited, participated in the scheme alleged herein by falsifying medical records to further the trafficking and forced labor of Plaintiff. GIO is therefore subject to personal jurisdiction in the United States through its parent company's ADR program, its SEC filings, and its direct participation in the scheme.

Defendant China Unicom is a Chinese state-owned enterprise that, through its subsidiary China Unicom (Hong Kong) Limited, is designated on the OFAC Non-SDN Chinese Military-Industrial Complex (CMIC) List under Executive Order 13959, with program tag CMIC-EO13959. China Unicom (Hong Kong) Limited was registered with the U.S. Securities and Exchange Commission as a foreign private issuer, filed annual reports on Form 20-F, and maintained American Depositary Shares (ADSs) listed on the New York Stock Exchange under the ticker symbol CHU US. China Unicom, through its U.S. subsidiary China Unicom (Americas) Operations Limited, is registered with the Federal Communications Commission as a Private Service Provider, maintains a headquarters address at 13800 Coppermine Road, Herndon, Virginia, and has a designated agent for service of process in Washington, D.C. (Robert Stup, Squire Patton Boggs (US) LLP, 2550 M Street, NW, Washington, DC 20037). China Unicom (Americas) Operations Limited has filed numerous applications with the FCC, including for submarine cable landing and transfer of control. China Unicom operates the facility at 2 Tai Seng Avenue, Singapore, which is designated as a Point of Presence (PoP) station and carrier-neutral data center. This facility is the location where Plaintiff was trafficked and forced to perform manual labor. The facility is connected to the FCC-licensed PPC-1 submarine cable system, which lands in Guam, a U.S. territory, and is therefore subject to U.S. jurisdiction. China Unicom is therefore subject to personal jurisdiction in the United States through its SEC registration and NYSE listing (now terminated but historically established), its FCC filings and U.S. subsidiary, its designated agent for service in Washington, D.C., its Virginia headquarters, and its ownership and operation of a facility connected to an FCC-licensed submarine cable system.

*18 U.S.C. § 1595 CIVIL REMEDY* - 4

Pro Se Civil Complaint

3. **Service Addresses**

| Party Type | Name | Address |
|---|---|---|
| Plaintiff | Sajjad Nasir | 30 Railway Terrace, Granville NSW 2142, Australia |
| Defendant 1 | Equinix Inc. | Equinix SE3, 2020 Fifth Avenue, Seattle, WA 98121, USA[1] |
| Defendant 2 | National Australia Bank Limited | c/o National Australia Funding (Delaware) Inc., 245 Park Avenue, 28th Floor, New York, NY 10167, USA[2] |
| Defendant 3 | GIO Insurance (Suncorp Group) | c/o Puglisi & Associates, 850 Library Avenue, Suite 204, Newark, DE 19711, USA[3] |

## IV.   FILING CHORNOLOGY

The Plaintiff's proceedings before the United States District Courts involved a series of procedural events concerning the filing of applications, payment of filing fees, requests for issuance of summons, and subsequent dismissals. The relevant procedural history is set out chronologically below.

**30 May 2026:** Plaintiff filed the complaint action (2:26-cv-01853-LK) in the United States District Court for the Western District of Washington, pro se, together with an application to proceed without prepayment of fees.

**30 May 2026:** The federal district court clerk's office marked the application to proceed without prepayment of fees as defective immediately after filing, thereby obstructing the filing of the complaint and forcing payment of the fee to proceed.

**6 June 2026:** Plaintiff's request for issuance of summons was denied, along with authorization to serve in a foreign country under the Hague Convention.

**14 June 2026:** Plaintiff filed an application for court appointed counsel and a motion for change of venue due to persistent obstruction and hostility from the clerk's office.

**24 June 2026:** Judge Lauren King of the United States District Court for the Western District of Washington dismissed the complaint without prejudice.

---

[1] Equinix, Inc. — Form 10-K Annual Report filed with the Securities and Exchange Commission.

[2] Defendants' U.S. presence is confirmed through their statutory filing with the U.S. Securities and Exchange Commission (SEC Form D).

[3] Defendants' statutory SEC filing (Form F-6, filed October 10, 2008).

*18 U.S.C. § 1595 CIVIL REMEDY - 5*

Pro Se Civil Complaint

**25 June 2026:** The District Court dismissed the application, declined to issue summons, and directed Plaintiff to refile the matter as a new application.

## V.    STATEMENT OF CLAIMS

### 1.    FACTUAL BACKGROUND LEADING TO DEFENDANTS' ALLEGED TRAFFICKING

The events underlying the alleged conduct occurred against the backdrop of a series of United States regulatory, national security, and telecommunications proceedings involving China Telecom-related entities. As set forth more fully below, those proceedings identified repeated regulatory concerns regarding compliance, national security, foreign ownership, and continued authorization to operate within the United States. Plaintiff alleges that, rather than complying with those regulatory obligations and enforcement measures, Defendants ignored, failed to comply with, or sought to evade them through subsequent conduct, corporate restructuring, and other actions alleged in this Complaint. The following background is provided solely to summarize the regulatory history and factual context preceding the events alleged herein and is not asserted as an independent basis for liability.

Prior to the period beginning in 2020, China Unicom Group maintained a multi-layered ownership and operational structure that contributed to regulatory ambiguity within the United States. At the top of the structure, ownership and control remained firmly held by the People's Republic of China through the state-controlled parent entity, China Unicom Group. Beneath the PRC parent, the corporate chain proceeded through China Unicom (A-Share Company), intermediate offshore holding entities in the British Virgin Islands, and China Unicom (Hong Kong) Limited, which served as the publicly traded international arm of the enterprise. This upper-tier ownership structure remained stable and effectively "locked" throughout the relevant period. No dilution, divestment, or restructuring occurred that altered PRC control. The 2011 cross-shareholding transaction with Telefónica S.A. did not modify this control structure; Telefónica acquired only a minority interest and did not obtain operational authority or governance rights over China Unicom Group. The PRC parent continued to exercise ultimate control over all subsidiaries and affiliates.

Below the Hong Kong entity, however, the operational footprint in the United States was fragmented. China Unicom Group maintained one formally recognized U.S. subsidiary, China Unicom USA Corporation, which held the FCC international Section 214 authorizations. In parallel, several similarly named entities—such as China Unicom America, China Unicom International, and China Unicom Global—operated Points of Presence, routing centers, or wholesale carrier functions. These entities were not reflected in the PRC parent's corporate disclosures and did not appear in SEC filings, creating ambiguity regarding their ownership, control, and regulatory obligations. This ambiguity became material because U.S. agencies

Pro Se Civil Complaint

evaluating foreign participation in telecommunications networks rely on clear ownership and control information to determine which entities fall within their jurisdiction. Under statutes such as 15 U.S.C. § 10, courts and regulators may "bring in additional parties" when necessary to ensure complete adjudication or enforcement. The existence of multiple affiliated entities using China Unicom branding, but lacking clear corporate lineage, complicated the ability of U.S. agencies to determine which entities were subject to regulatory oversight and which were responsible for routing, interconnection, or wholesale transit activities.

Between 2014 and 2015, China Unicom Group transferred its tower and physical infrastructure assets into China Tower Corporation, a newly formed entity jointly owned by China Unicom, China Mobile, and China Telecom. This restructuring removed physical infrastructure from China Unicom Group's balance sheet and further separated ownership of towers from operational routing activities. While this transfer clarified physical asset ownership, it did not resolve the ambiguity surrounding the U.S. operational entities. The period between 2016 and 2017 marked a significant shift. U.S. agencies identified discrepancies between the scale of wholesale routing activity conducted through China Unicom-related entities and the limited declared U.S. operations of the formally recognized subsidiary. Agencies also noted inconsistencies in ownership disclosures, operational reporting, and the relationship between the PRC parent and the U.S.-based entities. These concerns contributed to increased scrutiny of China Unicom Group's U.S. presence and prompted efforts to determine which entities were properly subject to regulatory obligations, including under statutes permitting the inclusion of additional parties when necessary for enforcement. This ownership and structural context form the foundation for subsequent regulatory actions and alleged conduct beginning in 2020.

Starting early 2020, the United States Team Telecom — the ad hoc arrangement of the Departments of Justice, Defense, and Homeland Security — found that China Telecom is under the influence of the Chinese military and is at risk of exploitation. This finding led to further actions from the FCC, tracing back to China Telecom's failure to comply with its 2007 Letter of Assurance and the national security concerns that followed. Those concerns became the subject of investigations and interagency review by the Executive Branch[1] agencies, which were formalized by Executive Order 13913 on April 4, 2020, establishing the Committee for the Assessment of Foreign Participation in the United States Telecommunications Services Sector. The Executive Branch agencies unanimously recommended that the FCC revoke and terminate China Telecom's

[1] For purposes of the recommendation, the Executive Branch[2] agencies included the Departments of Justice, Homeland Security, Defense, State, Commerce, and the United States Trade Representative. Authorization. The Department of Justice stated: "The security of our government and professional communications, as well as of our most private data, depends on our use of trusted partners from nations that share our values and our aspirations for humanity. Today's action is but our next step in ensuring the integrity of America's telecommunications systems." The Executive Branch recommendation was based on: the evolving national security environment since 2007 and

*18 U.S.C. § 1595 CIVIL REMEDY - 7*

Pro Se Civil Complaint

increased knowledge of the PRC's role in malicious cyber activity targeting the United States; concerns that China Telecom is vulnerable to exploitation, influence, and control by the PRC government; inaccurate statements by China Telecom to U.S. government authorities about where China Telecom stored its U.S. records; inaccurate public representations by China Telecom concerning its cybersecurity practices; and the nature of China Telecom's U.S. operations, which provide opportunities for PRC state-actors to engage in malicious cyber activity enabling economic espionage and disruption and misrouting of U.S. communications. The historical background summarized herein provides the context for the subsequent conduct and violations alleged in this Complaint.

By mid of 2020 and 2021, the continued regulatory actions resulted in revocation of the Defendants' telecom licenses, inclusion of their equipment on the Covered List, designation of their business under the Chinese Military-Industrial Complex list, and cancellation of their authorizations through a number of FCC[4] and other regulatory proceedings, including GN Docket No. 20-109, ITC-214-20010613-00346, ITC-214-20020716-00371, ITC-T/C-20070725-00285 (China Telecom Americas); GN Docket No. 20-110, ITC-214-20020728-00361, ITC-214-20020724-00427 (China Unicom Americas); and WC Docket No. 18-89 (Huawei, ZTE, and other covered equipment), along with related proceedings targeting Pacific Networks, ComNet, Chinabased testing laboratories, and submarine cable infrastructure. The President's Executive Order 13959 resulted in OFAC placing the Defendants' business, China Unicom (Hong Kong) Limited and its various trading security names, on the Non-SDN Chinese Military-Industrial Complex (CMIC) List, including its trade name trading in Singapore under the ticker K3ID SG, as well as in Hong Kong under 762 HK and in the United States under CHU US. These regulatory actions collectively stripped the Defendants of their authority to operate within the United States telecommunications sector and established the regulatory environment in which the subsequent conduct alleged in this Complaint occurred.

End of 2024, the Defendants China Unicom Hong Kong Ltd were once again subpoenaed by the U.S. Congress Committee (House Select Committee on the Chinese Communist Party, Chairman John Moolenaar, Ranking Member Raja Krishnamoorthi) for information related to its operations, and substantial information was sought related to its employees, its operations, its affiliates, and contractors, due to information available to the Committee with regard to its data centers, Points of Presence, and cloud activities still operating in the United States. Similarly, Defendants Equinix Inc was also subpoenaed by the U.S. Securities and Exchange Commission (SEC Subpoena, March 20, 2024) following a short seller report by Hindenburg Research[5] (March 20, 2024), and later a civil suit by its shareholders class action (In re Equinix, Inc. Securities

---

[4] GN Docket No. 20-109; ITC-214-20010613-00346; ITC-214-20020716-00371; ITC-T/C-20070725-00285

[5] *Chan v. Equinix, Inc., Meyers & Taylor*, Case No. **3:24-cv-02656-VC** (N.D. Cal.), class action complaint alleging violations of the federal securities laws.

*18 U.S.C. § 1595 CIVIL REMEDY - 8*

Pro Se Civil Complaint

Litigation, Case No. 4:24-cv-01680 (N.D. Cal. 2024)) alleging specifically that (a) Equinix misclassified maintenance expenses as growth capital expenditures to artificially inflate its Adjusted Funds From Operations (AFFO); and (b) Equinix made false and misleading statements about its financial performance and the true state of its business operations. These continued oversight actions, along with the criminal and civil proceedings, ultimately led to the Defendants conspiring to evade U.S. sanctions through a novel evasion scheme, where they invented several shell entities and related them through various relationships to dilute, hide, or disguise the identity of the sanctioned property. The Defendants China Telecom and China Unicom own and operate their facility at 2 Tai Seng Avenue, Singapore, for a decade or more as a Point of Presence and other infrastructure and cloud activities. The four blocks of properties were rebranded, and various shell entities were shown to operate on these activities. It is pertinent to mention here that none of these entities ever concealed their affiliation with the PRC while also maintaining FCC cable landing authority[6] throughout and currently as well[7].

.

## 2.    FACTS ALLEGED FRAUDULENT RECRUITMENT FOR TRAFFICKING

Between September 30, 2024, and January 19, 2025, Defendants Equinix Inc., National Australia Bank (NAB), and Australian Superannuation Fund Ltd. (Australian Super) violated 18 U.S.C. § 1590 (trafficking with respect to forced Labor) by knowingly and intentionally orchestrating the fraudulent recruitment and cross-border transportation of the Plaintiff from a facility owned and operated by Equinix Inc. (639 Gardeners Road, Sydney, Australia – "SY1") to a facility owned, operated, or associated with an entity on the Chinese Military-Industrial Complex Companies List – China Unicom (2 Tai Seng Avenue, Singapore – "Tai Seng Exchange"). The alleged trafficking conduct was carried out through deceptive recruitment tactics, including false identities, sham front offices, a network of fictitious employment agencies, and fraudulent employment advertisements posted on professional social job boards—all purportedly for the SY1 location. Having fraudulently secured the Plaintiff's labor at SY1 under the guise of legitimate employment, and as part of a single, continuous scheme, the Defendants knowingly transported, transferred, and trafficked the Plaintiff to the Tai Seng Exchange— an act directly caused by the Defendants' prior fraudulent recruitment. The purpose of this trafficking scheme was to cross-validate and legitimize the SY1 facility as an operational front office for the Defendants' broader joint venture. This venture was directly facilitated by NAB, acting as the employment

[6] FCC Section 43.82 Circuit Capacity Data (2024 lists China Mobile International Limited, China Telecom Global Limited, China Telecommunications Corporation, and China United Network Communications Group Company Limited as capacity holders, confirming their continued participation in U.S.–international submarine cable systems. These entities appear in the FCC's official capacity-holder tables, indicating ongoing cable-landing authority or capacity-holding status despite PRC affiliation

[7] Pacific Networks Corp. v. FCC, No. 22-1054 (D.C. Cir.), argued Sept. 20, 2022, decided Aug. 15, 2023.

*18 U.S.C. § 1595 CIVIL REMEDY - 9*

Pro Se Civil Complaint

superannuation fund trustee—both of whom knowingly participated in the deceptive recruitment and subsequent cross-border transportation with the intent to obtain forced Labor, in direct violation of 18 U.S.C. § 1590.

### 3.     FACTS – ALLEGED DECEPTION, COERCION, AND ABUSE OF PROCESS

Between January 21, 2025, and March 17, 2025, Defendants Equinix Inc., National Australia Ban (NAB), Australian Superannuation Fund Ltd. (Australian Super), and China Unicom violated 18 U.S.C. § 1589 (forced labor) by knowingly obtaining and maintaining the Plaintiff's labor and services through a scheme employing employment contractual fraud, physical isolation, coercive transportation methods, false banking transactions, abuse of legal and administrative processes, and a pattern intended to cause the Plaintiff to believe he would suffer serious harm. To effectuate this offense, the Defendants engineered a fraudulent employment contract and paired it with false banking transactions designed to create and enforce an artificial employment debt, requiring the Plaintiff to personally bear operational and corporate expenses under threat of manufactured legal and financial liabilities if he attempted to cease work. To enforce compliance, maintain physical isolation, and conceal the operational footprint, Defendant China Unicom transported the Plaintiff face down on the covered floor of a cargo van between facilities owned, operated, or associated with China Unicom. Under these coercive conditions, the Plaintiff was compelled to perform manual labor, consisting of the transportation, handling, and staging of IT and telecommunications hardware. The explicit corporate objective of this forced labour was to build, operationalize, and conceal a network of front-office facilities for China Unicom—an entity prohibited from providing telecommunications services within the United States under Federal Communications Commission Order (FCC 22-9). As a direct result of this forced labour, the Plaintiff sustained spinal trauma. The Defendants further abused legal and administrative processes by deliberately denying the Plaintiff access to diagnostic and emergency medical treatment, thereby maintaining his physical isolation and continuing the forced labour scheme throughout the relevant period, in direct violation of 18 U.S.C. § 1590.

### 4.     FACTS – ALLEGED PHYSICAL RESTRAINT & HARM

Between March 17, 2025, and June 30, 2025, Defendants extended their organized and systemic violations of 18 U.S.C. § 1590 including but not limited to Defendant Equinix Inc. manipulation and abuse of the Plaintiff's government-issued identities including its own security passes for the facilities at its owned and operated facility at 639 Gardeners Road, Sydney, Australia – "SY1" and facilities at 2 Tai Seng Exchange, Singapore associated with facilities owned or operated by Defendant China Unicom; Defendant National Australian Bank manufactured banking transactions to manufacture debts or moved cash  illegally to avoid U.S. SWIFT system abusing

Pro Se Civil Complaint

the Plaintiff's personal account number 734158173 held at Defendant's Branch ID 8173;Defendant GIO Insurance (Suncorp Group) joined Defendant National Australian Bank by orchestrating a sophisticated methodology of financial transaction fabrication to support a fabricated workers compensation certificate number 252790301 and fake workers claim number 7812878; Defendant Australian Superannuation Fund Ltd.did not spare even the Plaintiff's statutory fund account number 1072131772, fabricating it for false tax reporting and employment records for benefiting from the joint venture under 18 U.S.C. § 1590 with Defendant China Unicom to evade U.S. sanctions under sanctioned jurisdiction of CMIC-EO13959 and support alleged offences under Court's original jurisdiction 18 U.S.C. § 1589 for forced labor and 18 U.S.C. § 1590  and extended jurisdiction under 18 U.S.C. § 1596.

The Defendants knowingly benefited, financially or by receiving anything of value, from participation in a venture which engaged in acts violating 18 U.S.C. §§ 1589, 1590, , knowing or in reckless disregard of the fact that the venture had engaged in such violations, in contravention of 18 U.S.C. § 1593A. The joint venture comprised Equinix Inc., a U.S. corporation present in the United States; China Unicom, a designated CMIC entity seeking to evade U.S. sanctions; National Australia Bank Ltd., a national commercial bank incorporated in New York; Suncorp Group Ltd. (GIO Insurance), an SEC-registered issuer of American Depositary Shares; and AustralianSuper Pty Ltd., an SEC-registered institutional investment manager. The venture was structured to evade U.S. sanctions under CMIC-EO13959 and to derive financial benefit from forced labor and trafficking, thereby bringing the entirety of the venture within the original jurisdiction of this Court under 28 U.S.C. § 1331 and the extended jurisdiction under 18 U.S.C. § 1596.Defendant China Unicom, while appealing the Federal Communications Commission's revocation of its license (FCC 22-9) before the Ninth Circuit Court of Appeals, simultaneously established and organized a joint venture in violation of 18 U.S.C. § 1590 to counter and evade the CMIC-EO13959 sanctions and the Chinese Military-Industrial Complex Companies List, from which it continues to derive financial benefits through the alleged offences of trafficking under 18 U.S.C. § 1590 and forced labor under 18 U.S.C. § 1589.

## VI.    RELIEF

Defendants' conduct was not limited to trafficking and forced labor — those acts were a means to an end, not an end in themselves. At the end of 2024, Defendant China Unicom was subpoenaed by the U.S. House Select Committee on the Chinese Communist Party to provide updated identity and infrastructure information as required by the committee. Plaintiff is unable to confirm from the committee whether the required information was provided. However, Defendants' subsequent conduct confirms that Plaintiff was included in that information — as the dates of the seeking and providing align perfectly with the events of trafficking and forced labor.

*18 U.S.C. § 1595 CIVIL REMEDY - 11*

Pro Se Civil Complaint

Defendants subsequently used Plaintiff's government-issued identity documents at various other departments, in particular with taxation authorities, to validate their updated identities. Plaintiff seeks rectification and retrieval of all documents unlawfully concealed, fabricated, or possessed by Defendants[8].

Defendants, in order to validate their updated identity, persistently ran false injury compensation claims while never paying any compensation for injury treatment. Instead, Defendants reached out to doctors and radiology labs to obtain false medical reports and test results in order to undermine Plaintiff's injury. Plaintiff seeks full compensation for the injury resulting from Defendants' forced labor at a place which was never meant to be able to host telecommunications infrastructure. In order to hide the identity of sanctioned industries and buildings, Defendants repurposed one corner of the building and gave it a new identity. They used forced labor to transport telecommunications infrastructure into the facility to give an impression of an operational data center holding valid infrastructure linked to Defendants' various other sites. The conditions and location caused Plaintiff's back injury and permanent disability.

The Defendants knowingly benefited, financially or by receiving anything of value, from participation in a venture which engaged in acts violating 18 U.S.C. §§ 1589, 1590, knowing or in reckless disregard of the fact that the venture had engaged in such violations, in contravention of 18 U.S.C. § 1589. The joint venture comprised Equinix Inc., a U.S. corporation present in the United States; China Unicom, a designated CMIC entity seeking to evade U.S. sanctions; National Australia Bank Ltd., a national commercial bank incorporated in New York; Suncorp Group Ltd. (GIO Insurance), an SEC-registered issuer of American Depositary Shares; and AustralianSuper Pty Ltd., an SEC-registered institutional investment manager. The venture was structured to evade U.S. sanctions under CMIC-EO13959 and to derive financial benefit from forced labor and trafficking, thereby bringing the entirety of the venture within the original jurisdiction of this Court under 28 U.S.C. § 1331 and the extended jurisdiction under 18 U.S.C. § 1596. Defendant China Unicom, while appealing the Federal Communications Commission's revocation of its license (FCC 22-9) before the Ninth Circuit Court of Appeals, simultaneously established and organized a joint venture in violation of 18 U.S.C. § 1590 to counter and evade the CMIC-EO13959 sanctions and the Chinese Military-Industrial Complex Companies List, from which it continues to derive financial benefits through the alleged offences of trafficking under 18 U.S.C. § 1590 and forced labor under 18 U.S.C. § 1589.

---

[8] Congress: Select Committee on the Chinese Communist Party, chaired by John Moolenaar with Ranking Member Raja Krishnamoorthi, issued a **Subpoena** on **3 March 2025** seeking operational information from the sanctioned Chinese entity

*18 U.S.C. § 1595 CIVIL REMEDY - 12*

Pro Se Civil Complaint

WHEREFORE, the Plaintiff respectfully prays that this Court enters judgment in his favor and against the Defendants, jointly and severally, and awards the following relief:

Compensatory damages in an amount to be proven at trial, including but not limited to damages for medical expenses, lost wages, loss of earning capacity, pain and suffering, emotional distress, and financial harm; punitive damages in an amount sufficient to punish the Defendants for their egregious and willful misconduct and to deter future violations of 18 U.S.C. §§ 1589, 1590; injunctive relief, including an order enjoining the Defendants from continuing the trafficking, forced labor, and document manipulation scheme alleged herein, and requiring the return and restoration of all documents unlawfully concealed, fabricated, or possessed; and such other and further relief as this Court deems just and proper.

.

## VII.    CERTIFICATION AND CLOSING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.  I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:              07/21/2026
Signature of Plaintiff

Printed Name of Plaintiff     Sajjad Nasir

_18 U.S.C. § 1595 CIVIL REMEDY - 13_